**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **SAMUEL KOBRINSKY, AMBERTON** | § | |
| **APARTMENTS, JV, DEER CREEK** | § | |
| **APARTMENTS, JV, FOREST GLEN** | § | |
| **APARTMENTS, LLC, MARBACH** | § | |
| **ASSOCIATES, LLC, MEADOW** | § | |
| **ASSOCIATES, LLC, SAMUEL** | § | |
| **KOBRINSKY AND MARGUERITE D.** | § | |
| **KOBRINSKY, AS TRUSTEES OF THE** | § | |
| **SAM AND MARGUERITE KOBRINSKY** | § | |
| **REVOCABLE TRUST, and** | § | |
| **WESTWOOD APARTMENTS, LLC** | § | **CIVIL ACTION NO. 5:23-cv-** |
| | § | **00029** |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GREAT AMERICAN INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant** | § | |

**<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Samuel Kobrinsky (hereinafter "Kobrinsky"), Amberton Apartments, JV, Deer Creek Apartments, JV, Forest Glen Apartments, LLC, Marbach Associates, LLC, Meadow Associates, LLC, Samuel Kobrinsky and Marguerite D. Kobrinsky in their capacity as Trustees of the Sam and Marguerite Kobrinsky Revocable Trust, and Westwood, LLC (hereinafter the "Kobrinsky Entities"), file this first amended complaint against Defendant, Great American Insurance Company, and would show this honorable court the following:

## PARTIES

1. Plaintiff, Samuel Kobrinsky (hereinafter "Kobrinsky"), is a California resident, is a named insured for the Kobrinsky Properties[1], under a commercial excess insurance policy with Great American Insurance Company.

2. Plaintiff, Amberton Apartments, JV, is a Texas joint venture who owned the Amberton Apartment Complex located at 6000 Randolph Street, San Antonio, Texas 78233, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

3. Plaintiff, Deer Creek Apartments, JV, is a Texas joint venture who owned the Deer Creek Apartments located at 3379 Timber View Drive, San Antonio, Texas, 78251, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

4. Plaintiff, Forest Glen Apartments, LLC, is a Texas limited liability company who owned the Forest Glen Apartments located at 11600 Huebner Road, San Antonio, Texas 78230, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

5. Plaintiff, Marbach Associates, LLC, is a Texas limited liability company who owned the Polo Club Apartments located at 8797 Marbach Road, San Antonio, Texas

---

[1]The Kobrinsky Properties are as follows: The Amberton Apartments located at 6000 Randolph Blvd., San Antonio, Texas 78233; the Deer Creek Apartments located at 3379 Timber View Dr., San Antonio, Texas 78251; the Forest Glenn Apartments located at 11600 Huebner Rd., San Antonio, Texas 7825; the Meadow Creek Apartments located at 11022 Culebra Rd., San Antonio, Texas 78253; the Westwood Apartments, LP located at 11139 Culebra Rd., San Antonio, Texas 78253; the Polo Club Apartments located at 8797 Marbach Rd., San Antonio, Texas 78227; and the Village at Shavano Apartments located at 4601 De Zavala Rd., San Antonio, Texas 78249 (hereinafter collectively referred to as "the Kobrinsky Properties"). The seven Kobrinsky Properties consisted of hundreds of apartment buildings and approximately 2,400 apartment units.

78227, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

6. Plaintiff, Meadow Associates, LLC, is a Texas limited liability company who owned the Meadow Creek Apartments located at 11022 Culebra, San Antonio, Texas 78160, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

7. Plaintiffs, Samuel Kobrinsky and Marguerite D. Kobrinsky, in their capacity as Trustees of the Sam and Marguerite Kobrinsky Revocable Trust, are additional insureds that owned the Village at Shavano Apartments located at 4601 De Zavala Road, San Antonio, Texas 78249, and is an additional insured under its commercial excess insurance policy with Great American Insurance Company.

8. Plaintiff, Westwood Apartments, LP, is a Texas limited partnership who owned the Westwood Apartment Complex located at 11139 Culebra, San Antonio, Texas 78253, and is an additional insured under the commercial excess insurance policy with Great American Insurance Company.

9. Defendant, Great American Insurance Company (hereinafter "Great American"), is an insurance company doing business in Texas that can be served through its agent, United Agent Group, Inc., 5444 Westheimer Road, Suite 1000, Houston, Texas 77056-5318.

## JURISDICTION

10. The Court has jurisdiction over this dispute pursuant to 28 USC § 1332(a).

**VENUE**

11. The venue of this case is proper in the Western District of Texas, San Antonio Division, under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district and county.

**AGENCY AND RESPONDEAT SUPERIOR**

12. Whenever in this petition it is alleged that the Defendant did any act or thing, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

**CONDITIONS PRECEDENT**

13. All conditions precedent to recovery have occurred or been performed.

**FACTS OF THE CASE**

14. Kobrinsky and the Kobrinsky Entities[2] purchased a primary commercial insurance policy (Policy Number BPR170020-3) from Colony Insurance Company (hereinafter "Colony"), and a commercial excess insurance policy from Great American (Policy Number CPP 3086075-01) to cover property losses for the policy period of March 31, 2020 to March 31, 2021 at the Kobrinsky Properties.

**A. *The Texas Freeze.***

15. On or about February 16, 2021, during the subject policy period, a severe winter storm known as Winter Storm Uri or the Texas Freeze impacted the state. During the

---

[2] The Kobrinsky Entities are a total of seven additional insureds: (1) Meadow Associates, LLC; (2) Westwood Apartments, LP; (3) Deer Creek Apartments, JV; (4) Samuel Kobrinsky and Marguerite D. Kobrinsky, in their capacity as Trustees of The Sam and Marguerite Kobrinsky Revocable Trust; (5) Marbach Associates, LLC; (6) Amberton Apartments, JV; and (7) Forest Glen Apartments, LLC (hereinafter collectively referred to as the "Kobrinsky Entities").

Texas Freeze, widespread power outages occurred across Texas due to an inadequate power grid and many buildings lost heat for an extended period of time. Without power and heat, the water in many interior water pipes froze and burst those pipes, which resulted in substantial interior water damage to those buildings.

16. In addition, the severe damage caused by the Texas Freeze had a significant impact on various aspects of life in the state, including the availability of contractors and handymen. The damage resulted in a surge in demand for repair and restoration services, leading to a shortage of available contractors and tradespeople. Many residents and businesses faced difficulties in locating contractors and handymen who were willing and able to provide their services in a timely manner. This high demand for contractors and handymen was driven by the need to repair burst pipes, restore electricity, and address other issues caused by the extreme cold and freezing conditions. Supply chain disruptions and transportation challenges due to the weather conditions also contributed to the difficulty in sourcing these services. As such, it was common for contractors and tradespeople to be stretched thin as they worked to address urgent repair needs across the affected area.

## B. *The Kobrinsky Properties' claim.*

17. The Kobrinsky Properties suffered such pipe breaks from the power outages, which caused a significant amount of ensuing water damage in the subject apartment complexes and approximately 2,400 apartments units at those properties. The insureds reported this loss to Colony and its agents, who assigned this loss the claim number 285424 with a date of loss of February 16, 2021. The insureds also reported this loss to Great American and its agents, who assigned this loss the claim number A00348944. Great American then assigned Dan Moore (hereinafter "Moore"), Great American's in

house adjuster, to handle and adjust the claim.

18. On February 20, 2021, Stacy Moos of Diamond Management (the Property Management Company that managed the Kobrinksy Properties), acting on behalf of Samuel Kobrinsky and the Kobrinsky Entities, retained the services of a Texas licensed public adjuster, Jason Lanier of JA Lanier and Associates Inc. (hereinafter collectively referred to as "Lanier"), to assist the insureds in the preparation, presentation, and adjustment of their water damage insurance claims to Colony and Great American on the subject apartment complexes.

19. On February 26, 2021, and despite the shortage of available contractors, Diamond Management and Lanier hired a general contractor, JMI Contractors, LLC (hereinafter "JMI"), to complete the build-back and restoration of the Kobrinsky Properties. On March 1, 2021, Diamond Management also hired Associated Innovations, Inc., (hereinafter "Associated Innovations") to properly mitigate and remediate the water damage to all seven of the Kobrinsky Properties.

20. Over the next several months, JMI and Associated Innovations immediately began remediating the water damage, performing moisture scans, and starting the build back and repairs of approximately 2,400 apartment units in all seven of the Kobrinsky Properties. The remediation work being performed to the Kobrinsky Properties at this time consisted of the following: (1) plumbing repairs; (2) sprinkler system repairs; (3) removal of water damaged building materials; and (4) drying and cleaning of the buildings sub-structure for build-back repairs.

## C. *Colony's adjustment of the claim.*

21. Thereafter, Lanier measured, documented and presented the insured's claim to its primary carrier, Colony Insurance Company, and Colony's adjuster, for damage to the

Kobrinsky Properties from this loss and the extensive water damage from busted pipes. Colony then retained DND Construction and LEA Environmental, LLC to conduct inspections of the Kobrinsky Properties. During Colony's initial adjustment of the claim, DND Construction created a remediation protocol, in which the Kobrinsky Properties were designated into "Damage Level" categories, "levels 1 through 5." Based on its March 1, 2021 inspection, DND Construction determined that a total of 682 units were water damaged units and that 304 tenants were displaced. Lanier and DND Construction also realized that the scope would be expanded because more water damage would likely be discovered.

## D. *Great American's adjustment team.*

22. After its March of 2021 inspections, Colony notified the insured's excess carrier, Great American, that the damage would easily exceed Colony's policy limits of $5,000,000. Great American then retained a consulting team comprised of Jon Carnahan of Sedgwick (hereinafter "Carnahan"); Mark Sage (hereinafter "Sage") of DND Construction Services, LLC (hereinafter "DND"); EFI Global Inc.[3] (hereinafter "EFI") an engineering company; Bill Boss (hereinafter "Boss") of Old School Vendor & Project Management; and Brett Lochridge[4] (hereinafter "Lochridge") of Unified Building Sciences, Inc. (hereinafter "UBS") to help evaluate, oversee, and prepare estimates for this

---

[3] For example, EFI Global, Inc., is a Sedgwick owned company, that derives most of its income from working for insurance companies. Defendant, Great American, did never made Plaintiffs aware of this potential conflict of interest and acted as though EFI was an independent engineering company.

[4] *See* In *Liberty Mut. Grp. v. Mayes*, CASE NO. 5:20-CV-00967 (W.D. La. Oct. 2, 2020), Brett Lochridge of UBS was found to be biased in favor of insurance companies and was not qualified as an "independent" appraiser. Mr. Lochridge has also presented seminars for insurance company adjusters alongside Defendant's counsel, Zelle LLP, at the 2022 DRI Insurance Coverage and Claims Institute.

extensive loss and the water damage to the Kobrinsky Properties. Separately, Great American hired Kurt Harms (hereinafter "Harms") and Dave Schlader (hereinafter "Schlader") of Buchanan Clarke Schlader, LLP (hereinafter "BCS") to adjust the lost rents claims on the Kobrinsky Properties caused by Winter Storm Uri.[5]

**E.** ***Great American's first inspection and Colony's exhaustion of its policy limits.***

23. On April 6, 2021, Sedgwick, UBS, Sage, and Lanier began initial inspections of the Kobrinsky Properties. During this inspection, the parties were unable to gain access to some of the affected units. Sedgwick, UBS, Sage, and Lanier also observed ongoing demolition and repairs being done to all seven of the Kobrinsky Properties. This inspection showed Great American, Lochridge, and Carnahan that the insured was acting diligently to mitigate the damage and repair the Kobrinsky Properties. On April 22, 2021, Colony exhausted its policy limits of $5,000,000, and Lanier submitted the claims to Great American for the additional damage to the Kobrinsky Properties.

**F.** ***Great American and Moore's first misrepresentation.***

24. On April 12, 2021, Great American, Boss, Carnahan, Sage, and Lanier again inspected the Kobrinsky Properties. During this inspection, the parties agreed that the scope of work would need to be expanded and both parties were tasked with documenting any additional water damage that was found. This inspection showed Carnahan, Boss, Moore, Sage, and Great American that the Kobrinsky Properties were severely water damaged and that the insured was expeditiously remediating the water damage and

---

[5] In response to Plaintiffs' September 22, 2022, DTPA demand letter, Defendant, Great American, elected to accept liability on behalf of these adjusters and consultants. By doing so, Great American has shown favor toward these individuals, and helped the individuals avoid litigation costs, attorney's fees, or monetary liability for their actions.

making proper repairs.

25. In an April 29, 2021 letter, however, Moore represented to Diamond Management that Great American "has found that efforts [by the insured] to mitigate have been less than adequate to prevent further loss." Moore did not identify what was inadequate about the repairs and mitigation in the letter. None of the consultant team identified any inadequacies at the various inspections or notified Kobrinsky's representatives as such. In this same letter, Moore did not request an inspection or ask for additional documentation regarding the repairs to the Kobrinsky Properties. Moore's statements in this letter are a violation of Chapter 541.061 of the Texas Insurance Code because he knew or should have known (based on the previous inspections) that the insured was diligently making repairs to its properties.

26. In an April 19, 2021 email, Carnahan admitted to Lanier that he understood the difficulties that Diamond Management faced in gaining access to some of the potentially affected and occupied units. In the same email, Carnahan asked Lanier for JMI's "ballpark" number on what had been incurred to date. In an April 23, 2021 email, Lanier notified Carnahan that JMI had already spent approximately $4,500,000 above Colony's policy limits in making repairs and was incurring an additional $75,000 per day. In an April 27, 2021 email, Lanier also supplied Carnahan and Harms with the Kobrinsky Properties' monthly rent rolls for the prior two years.

## G. *Additional water damage.*

27. In a May 4, 2021 email, Sage notified Lanier that he wanted to inspect the property and requested that Lanier generate a list of common areas and additional water affected units that had recently been discovered. In a May 8, 2021 email, Lanier provided Carnahan and Sage with this list and also advised them that water damaged units were

still being discovered. In the same email, Lanier also notified Carnahan that repairs to one of the Kobrinsky Properties, Meadow Creek, were completed.

28. On May 24, 2021, Sage and EFI Global inspected the Kobrinsky Properties and agreed that there was significant water damage to the buildings. In a May 26, 2021 email, Lanier provided Harms with an updated lost rent calculation and notified him that the insureds were suffering financially due to the lost rent and out of pocket expenses being incurred. Harms then advised Lanier that he was going to issue Great American a payment recommendation.

**H. _Great American continued to delay payment of the claim._**

29. In a June 2, 2021 email (and nearly two months after Great American's initial inspection and receipt of the insured's loss rent calculations) Carnahan notified Lanier that his team was also working with Great American to recommend an "initial payment" for the damages to the Kobrinsky Properties. In a June 2, 2021 response, Lanier notified Carnahan that he was creating build-back repair estimates for each complex with the caveat that many units were proving to be difficult to gain access to. On June 9, 2021, Lanier supplied Carnahan, Sage, Harms, Lochridge, and Boss with the insured's direct out of pocket costs to date.

**I. _Great American finally issues its first payment._**

30. In a July 29, 2021 email, Lanier told Carnahan that Great American had still refused to issue any payment to the insured based on the documentation that it had received. Lanier further advised Carnahan that the insured was in dire straits and that Lanier was surprised that the contractors had not walked off the job due to lack of payment. On August 3, 2021, Great American finally issued a payment for property damage and lost rents totaling $2,606,404.52 (above Colony's $5,000,000 policy limits).

31. In an August 19, 2021 email, Lanier advised Carnahan that the payment did not reflect the actual amount of lost rent calculations that the insured had been submitting. In this email, Lanier attached a partial proof of loss for the proper amounts of lost rent owed and requested that Great American issue a monthly payment for these lost rents. Thereafter, Carnahan notified Lanier that Dave Schlader of BCS would be sending over his lost rent calculations. In an August 31, 2021 email, Lanier notified Schlader that his calculations were not purely based upon the "rental value" per each location as defined under the subject insurance policy. Schlader, instead, subtracted non-continuing expenses which were not applicable to the Kobrinsky Entities' loss. Schlader's loss of rental value calculations is a violation of Chapter 541.061 of the Texas Insurance code because Great American relied upon his calculations which misrepresented the "Rental Value" which has a specific definition in the subject insurance policy.

32. In a September 3, 2021 email, Lanier also advised Moore of Great American of the insured's position regarding Schlader's improper lost rent calculations and that the Kobrinsky Entities were continuing to incur more lost rent by the day. Moore simply responded that Great American was continuing its investigation. In a September 14, 2021 email, Lanier provided Carnahan with how the insured's lost rent should have been calculated under the policy.

## J.  *Carnahan's wrongful accusations and Lanier's response.*

33. Over the next few weeks, Lanier provided Carnahan with his estimates for the proper amount to restore each of the Kobrinsky Properties to its pre-loss condition. In a September 14, 2021 email to Lanier, Carnahan inappropriately accused Lanier of delaying production of his estimates. Carnahan made this accusatory statement even though Sage's (Great American's consultant) estimates had not been provided. In the same email,

Carnahan improperly asserted that he had not received enough supporting documentation from the insured to issue an additional $850,000 in withheld depreciation.

34. In a September 14, 2021 response, Lanier notified Carnahan that his estimates have been a gradual work in progress due to discovering additional water damage and that he had frequently been returning to the various properties to collect additional scope information. Lanier also re-iterated to Carnahan that this process has been very time consuming and inherently difficult because he wanted his estimates to capture the entire scope of damage. Lanier further explained to Carnahan that the Kobrinsky Entities were incurring lost rental income each day, and that the costs associated with build-back repairs should be addressed when the contractors finish their repairs and/or file liens on the Properties.

35. Lanier also advised Carnahan that Boss of Old School Vendor & Project Management has had access to the weekly billings for the mitigation work being performed by JMI and Associated Innovations from the very beginning of Great American's involvement. Carnahan's misrepresentation that Great American had not received enough documentation to release the $850,000 is a violation of Chapter 541.061 of the Texas Insurance Code because he knew or should have known that Great American and its consultants had access to JMI's and Associated Innovations' weekly billings on which liability had become reasonably clear.

**K. _The complex adjusting process._**

36. In a September 22, 2021 email, Lanier re-iterated to Carnahan the complex adjustment process and the insured's lost rental calculations. In this email, Lanier explained that the adjustment process was time-consuming because of the following

factors: (1) Scope of work expansion due to additional water damaged materials being discovered in the mitigation process; (2) Dangerous travel conditions due to the winter freeze; (3) Unavailability of plumbing components due to the widespread freeze damage; (4) Lack of manpower due to the widespread freeze damage; (5) Performing door-to-door walkthroughs of the complexes consisting of approximately 2,400 units; and (6) Gathering adequate photo documentation. COVID-19 was also a factor during this time which made it more difficult to gain access to some of the inhabited units. Lanier re-iterated all of this to Carnahan based upon his poor questioning and inappropriate assertions that the adjustment was being delayed.

37. In the same email, Lanier also informed Carnahan that the issue with the water pressure lines persisted, resulting in additional pipe bursts and subsequent ensuing water damage. Lanier also explained to Carnahan that the lost rent calculations were based upon the affected water damaged units that were discovered by both parties and shown in their joint early inspection tracker. Finally, Lanier explained to Carnahan that the amounts of lost rent being claimed had already been mitigated due to the insured keeping some of the tenants within their damaged units.

## L. *Great American finally provides Lanier with Sage's estimates.*

38. In a September 24, 2021 email, and after providing his own estimates, Lanier advised Carnahan that he has not received a copy of Sage's estimates for the dwelling damage. In a response email, Carnahan admitted to Lanier that Sage's estimates had not been provided. Thereafter, Sage provided Lanier with Sage's low-ball estimates for the costs associated with the dwelling damage. Sage's estimates did not include many of the obvious water damaged items that had been previously inspected by both adjusters. Great American then relied on Sage's estimates to delay payment of the insured's claim in

violation of Chapter 541.060 of the Texas Insurance Code.

39. On October 13, 2021, Lanier provided Moore and Great American with partial proofs of loss for the property damages to all seven of the Kobrinsky Properties in the amount of $29,895,652.96, less prior payments of $6,401,699.23, for a total amount of $23,493,953.73. These proofs of loss were based upon the previously submitted invoices and documents relative to each apartment complex upon which Great American's liability had become reasonably clear. Along with these executed proofs of loss, Lanier provided Great American with 485 moisture maps, photos, and updated spreadsheets for lost rents and out-of-pocket expenses. Lanier then requested that Great American immediately and unconditionally tender full payment based upon these proofs of loss.

## M. *Great American forces insured to sign proof of loss to receive payments.*

40. In an October 14, 2021 email, Janey Ziegelgruber (hereinafter "Ziegelgruber"), notified Lanier that Great American was going to issue an additional $67,791 payment for lost rents if the insured signed another proof of loss. On October 26, 2021, Lanier provided Ziegelgruber with the insured's executed partial proof of loss "under protest." The Kobrinsky Entities signed this proof of loss under protest because they believed that the previously submitted proofs of loss triggered Great American's statutory obligations under Chapter 541.060 to effectuate a prompt, fair, and equitable settlement of a claim on which liability had become reasonably clear.

## N. *Great American continued to delay.*

41. Over one month later, Great American had still not accepted or rejected the Kobrinsky Entities' October 13, 2021 proofs of loss. Great American had also refused to provide monthly rental payments as requested by the insured and its public adjuster. In this respect, Colony's $5,000,000 payment was spent towards the property damage

repairs which was still significantly insufficient to fully restore the properties, leaving the Kobrinsky Entities with substantial unpaid lost income.

42. In a November 18, 2021 email, Lanier provided Carnahan with another proof of loss and calculation spreadsheet for lost rental value. This proof of loss represented the total lost rents to date of $1,675,932.55 less Great American's previous payments of $483,000 and the policy's $100,000 deductible for a total lost rent amount owed of $1,092,912.55. Lanier again explained to Carnahan that the calculations he provided represented "Rental Value" as defined under the subject insurance policy. In the same email, Lanier notified Carnahan that the insured's lenders no longer had funds to continue paying the contractors for the repair work being done to the Kobrinsky Properties. In addition, Lanier asked Carnahan when the insured could expect Great American to either accept or reject the submitted October 13, 2021 proofs of loss.

O. ***Great American relied on its biased accountants and imposed unreasonable timelines.***

43. Even after being notified that BCS' calculations did not comply with the policy, Great American again relied on BCS' calculations. In a November 19, 2021 email, Carnahan advised Lanier that Great American would be issuing a partial payment for the amount of lost rental value of only $433,385. In the same email, Carnahan stated that Great American was imposing a period of restoration for "level 3" damaged units that ended on November 3, 2021, and a period of restoration for "level 4 & 5" damaged units on December 7, 2021. These timelines were unreasonable as they did not take into effect the scale of the work needed, along with labor and supply chain issues. Great American relied on these unreasonable timelines so that it could stop paying lost rents well before the dates required by the policy. Great American and Carnahan also imposed these

restrictive timelines with knowledge of the factors explained in Section K, *supra*. Additionally, Carnahan and Great American knew or should have known that some of the affected units were inhabited which made the demolition and drying process more difficult and time consuming, especially with the continuing COVID pandemic.

44. In a November 23, 2021 response, Lanier explained to Carnahan that Great American's periods of restoration were not realistic for inhabited multifamily communities. In the same email, Lanier notified Carnahan that Great American's theory implies that there would be enough manpower to simultaneously make repairs to the approximately 800 damaged units.  Lanier also reminded Carnahan that Great American had still not accepted or rejected the insured's October 13, 2021 proofs of loss.

## P. *Dan Moore's continued misrepresentations.*

45. In a December 1, 2021 letter, Moore misrepresented to the insureds that the insureds failed to provide adequate information to support its lost rental value claim and also failed to attempt to mitigate the loss. Moore also erroneously asserted that the insureds were not acting expeditiously enough to mitigate the loss and requested information from the insured that Great American's consultant team had already been provided. Moore made these misrepresentations despite the multiple proofs of loss, lost rent spreadsheets, lost rent calculations, early inspection trackers, moisture maps, photographs, and property damage calculations that had been provided to its consulting team.

46. In this same letter, Great American and Moore further misrepresented that the insureds "failed to act in a manner consistent with attempting to mitigate its loss." Great American and Moore made this misrepresentation when they knew or should have known that Lanier, JMI, Associated Innovations, and Diamond Management were actively

performing build-back and water remediation repairs under difficult conditions. Great American and Moore also inappropriately asserted that it was "requesting estimates from Lanier for five months." Moore made this misrepresentation when he knew or should have known that the Kobrinsky Entities and Lanier had not received Sage's estimates until September 24, 2021. As stated above, Lanier's estimates were provided on September 14, 2021, ten days before Great American's estimates were provided. These misrepresentations by Great American, Moore, and its adjusting team show that they failed to conduct a reasonable investigation and misrepresented material policy provisions in violation of Chapters 541.060 and 541.061 of the Texas Insurance Code.

**Q. _Lanier's response to Moore._**

47. In a January 20, 2022 letter, Lanier again advised Moore that the Kobrinsky Entities allowed many of the tenants to remain in their affected units for as long as possible as the repairs were being performed.  In doing so, the Kobrinsky Entities mitigated the damages for its loss of rental value claim by hundreds of thousands of dollars. Lanier also re-iterated to Moore that the insured acted expeditiously to first report its loss and retain plumbing contractors, demolition contractors, water extraction companies, and moisture mitigation companies among others to assist with mitigation. In addition, Lanier told Moore that by the end of the first week of the freeze the insured's contractors were already working long hours trying to make plumbing repairs so that water could be restored to the Kobrinsky Properties.

48. Lanier's letter also advised Moore that the insured's contractors had been diligently walking the units, pulling out soaked materials, documenting additional water damage, and performing other mitigation efforts. Lanier continued to explain to Moore that this process was very time-consuming and that Moore's consultants, particularly

Sage and DND, were well-aware of the situation and that Lanier's estimates were submitted as soon as possible under the circumstances. Additionally, Lanier told Moore that Great American's consulting team had identified and reported to him that more than 304 units could not be rented due to the extensive water damage. In this same letter, Lanier told Moore that the Kobrinsky Entities' contractors had already placed liens on the Kobrinsky Properties for the work that had been performed and demanded payment immediately.

49. Contrary to Moore's misrepresentations, Lanier advised Moore that Great American's consultants had telephonically told him that "they did not need any additional information" to recommend a claim payment. In addition, Lanier advised Moore that he had already provided Great American's consultants, especially Carnahan, with all the documentation in response to Moore's repetitive requests for information.

50. In March of 2022, Great American issued eight supplemental payments totaling $2,889,060.94 for dwelling damages and an additional $201,875.02 for lost rents.

## R. *Moore's unnecessary demands.*

51. Over the next month, Lanier continued to supply Great American and its consultant team with updated lost rent spreadsheets and out-of-pocket expenses that the Kobrinsky Entities were incurring. In an April 25, 2022 letter, Moore again requested unreasonable, repetitive, unnecessary, and/or irrelevant information from the insured. The Kobrinsky Entities, however, supplied Moore and Great American with further responsive documents to these requests. The Kobrinsky Entities also advised Moore than many of these requests for information were already answered and provided to its consultant team, and that those individuals have had full access to most of this

information from the beginning of the claim. In addition, the Kobrinsky Entities advised Moore that his and Great American's requests were not relevant to future claim payments.

52. In this same letter, Moore also responded to Lanier's January 20, 2022 letter. In his response, Moore continued to represent that the insured had not supplied Great American or its team of consultants with "relevant information" and inappropriately blamed the Kobrinsky Entities for not having all the repairs done even though it had refused to properly pay the claim. Moore also stated that the insured should have given Great American an opportunity to inspect the additional water damaged units before demolition and tear out began. Moore made this statement contemporaneously with his statement that the insured had failed to timely repair its properties. Moore and Great American then inappropriately blamed the insured for beginning demolition and tear out of these affected units as an excuse to issue low-ball payments of the claim.

53. These misrepresentations by Great American, Moore, and its adjusting team show that they failed to conduct a reasonable investigation and misrepresented material policy provisions in violation of Chapters 541.060 and 541.061 of the Texas Insurance Code.

## S. *Repairs to the Kobrinsky Properties were completed.*

54. In a June 13, 2022 email, Lanier notified Carnahan that JMI and Associated Innovations had completed all the necessary repairs to the Kobrinsky Properties. In the same email, Lanier requested that Great American release any withheld depreciation and explained that the recently submitted lost rent spreadsheets show that the affected units were now fully restored and occupied.

## T. *Restoration and Repair Costs.*

55. The following is a breakdown of all the costs incurred by the Kobrinsky Entities

to restore and repair the Kobrinsky Properties to its pre-loss condition. These amounts do not include previous insurance payments which are included in the chart below.

### *The Amberton Apartments*

56. The Amberton Apartments (hereinafter "Amberton") is an apartment complex with a total of 552 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Amberton suffered water damage to 126 of its 552 residential units.

57. In order to make those units habitable, JMI began making repairs to the Amberton on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Amberton from the subject loss was $2,597,323.65. Associated Innovations began water mitigation repairs to Amberton on March 2, 2021 and finished its remediation on November 1, 2021. Associated Innovations' total cost to remediate the water damage to Amberton from the subject loss was $2,600,517.46. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of **$5,197,841.11** for the reasonable and necessary cost to remediate the water damage and repair the subject apartments at Amberton to their pre-loss condition.

### *The Deer Creek Apartments*

58. The Deer Creek Apartments (hereinafter "Deer Creek") is an apartment complex with a total of 312 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Deer Creek suffered water damage to 97 of its 312 residential units.

59. In order to make the units habitable, JMI began making repairs to Deer Creek on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Deer Creek from the subject loss was $2,728,311.90. Associated Innovations began water mitigation repairs to Deer Creek on

March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Deer Creek from the subject loss was $2,031,656.61. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of **$4,759,968.51** for the reasonable and necessary cost to repair and restore Deer Creek to its pre-loss condition.

<u>*The Meadow Creek Apartments*</u>

60. The Meadow Creek Apartments (hereinafter "Meadow Creek") is an apartment complex with a total of 204 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Meadow Creek suffered water damage to 8 of its 204 residential units.

61. In order to make those units habitable, JMI began making repairs to Meadow Creek on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Meadow Creek from the subject loss was $401,183.80. Associated Innovations began water mitigation repairs to Meadow Creek on March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Meadow Creek from the subject loss was $139,434.96, which Great American paid. As a result, the Kobrinsky Entities owe JMI a total of **$401,183.80** for the reasonable and necessary cost to repair and restore Meadow Creek to its pre-loss condition.

<u>*The Forest Glen Apartments*</u>

62. The Forest Glenn Apartments (hereinafter "Forest Glen") is an apartment complex with a total of 376 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Forest Glen suffered water damage to 76 of its 376 residential units.

63. In order to make the units habitable, JMI began making repairs to Forest Glen on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Forest Glen from the subject loss was $4,685,130.48. Associated Innovations began water mitigation repairs to Forest Glen on March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Forest Glen from the subject loss was $5,790,311.22. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of **$10,475,441.70** for the reasonable and necessary cost to repair and restore Forest Glen to its pre-loss condition.

### *The Westwood Apartments*

64. The Westwood Apartments (hereinafter "Westwood") is an apartment complex with a total of 240 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Westwood suffered water damage to 55 of its 240 residential units.

65. In order to make the units habitable, JMI began making repairs to Westwood on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Westwood from the subject loss was $1,231,132.84. Associated Innovations began water mitigation repairs to Westwood on March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Westwood from the subject loss was $388,771.75. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of **$1,619,904.59** for the reasonable and necessary cost to repair and restore Westwood to its pre-loss condition.

### *The Polo Club Apartments*

66. The Polo Club Apartments (hereinafter "Polo Club") is an apartment complex

with a total of 480 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Polo Club suffered water damage to 194 of its 480 residential units.

67. In order to make the units habitable, JMI began making repairs to Polo Club on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Polo Club from the subject loss was $4,822,795.15. Associated Innovations began water mitigation repairs to Polo Club on March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Polo Club from the subject loss was $4,580,587.47. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of **$9,403,382.62** for the reasonable and necessary cost to repair and restore Polo Club to its pre-loss condition.

### *The Village at Shavano Apartments*

68. The Village at Shavano Apartments (hereinafter "Shavano") is an apartment complex with a total of 480 residential units. Due to freezing pipes and ensuing water damage from those pipes bursting, Shavano suffered water damage to 194 of its 480 residential units.

69. In order to make the units habitable, JMI began making repairs to Shavano on February 26, 2021 and finished its repairs nearly one year later in February of 2022. JMI's total cost to repair the damage to Shavano from the subject loss was $3,380,897.67. Associated Innovations began water mitigation repairs to Shavano on March 2, 2021 and finished its repairs on November 1, 2021. Associated Innovations' total cost to repair the water damage to Shavano from the subject loss was $2,761,405.54. As a result, the Kobrinsky Entities owe JMI and Associated Innovations a total of $**6,142,303.21** for the reasonable and necessary cost to repair and restore Shavano to its pre-loss condition.

### *Lost Rent and Out-of-Pocket Expenses*

70. In addition to the amount that Great American owes on the completed dwelling repairs, Great American also owes Plaintiffs for lost rents and out-of-pocket expenses that Plaintiffs incurred as a result of the claim. During the time that repairs were being completed by JMI and Associated Innovations, many of the tenants living in the damaged units at the Kobrinsky Properties were required to find alternative places to live because the water damage made the apartments uninhabitable. In order to help mitigate the amounts for loss of rents, Diamond Management slowly moved tenants at the Kobrinsky Properties out as the repair work was being completed. As a result, the Kobrinsky Properties suffered a total loss of $2,202,215.79 in lost rents. To date, Great American has only paid $1,218,281 for such lost rents and still owes Plaintiffs approximately **$983,934.79** for those lost rents.

71. Diamond Management also incurred mitigation costs and had to hire additional workers right after the storm to start mitigating and remediating the water extensive water damage at the Kobrinsky Properties, which included, but was not limited to; (1) fire watchers; (2) plumbers; (3) carpet cleaners; (4) security guards; and (5) maintenance workers. Diamond Management incurred a total of $969,501.65 in out-of-pocket expenses for this remediation. To date, Great American has only paid the Kobrinsky Entities a total of $361,384.52 for these out-of-pocket expenses and still owe **$608,111.13** for this work.

**U. _Total Costs Incurred by the Kobrinsky Entities_**

72. As a result of Great American's failure to timely and adequately pay for the water damage to the subject apartment complexes as previously described in this complaint, Great American still owes the Kobrinsky Entities the following amounts:

| KOBRINSKY COSTS INCURRED | AMOUNT |
|---|---|
| Property Repairs: | $38,000,025.54 |
| Lost Rents: | $2,202,215.79 |
| Out-of-Pocket Expenses | $969,501.65 |
| **TOTAL COSTS INCURRED:** | **$41,171,742.98** |

| PAID TO DATE BY INSURANCE | AMOUNT |
|---|---|
| Property Repairs: | $10,099,878.20 |
| Lost Rents: | $1,218,281.00 |
| Out-of-Pocket Expenses: | $361,384.52 |
| Policy Deductible: | $100,000 |
| Colony's Prior Payment: | $5,000,000 |
| **TOTAL PAID TO DATE:** | **$16,449,543.72** |
| **TOTAL AMOUNT STILL OWED:** | **$24,722,199.26** |

## V. _Interest owed under Section 28.004 of the Texas Property Code._

73. In addition, under Section 28.004 of the Texas Property Code, the Kobrinsky Entities owe JMI and Associated Innovations, the 1.5% interest each month payment was overdue for all seven of the Kobrinsky Properties. Below is a chart listing the amount of interest per apartment complex that the Kobrinsky Entities owe JMI and Associated Innovations for overdue payments.

| PROPERTY | INTEREST DUE |
|---|---|
| Amberton Apartment Complex | $653,097.65 |
| Deer Creek Apartment Complex | $619,752.49 |
| Meadow Creek Apartment Complex | $5,409.18 |
| Forest Glen Apartment Complex | $1,303,797.60 |
| Westwood Apartment Complex | $271,956.91 |
| Polo Club Apartment Complex | $1,212,633.72 |
| The Village at Shavano Apartment Complex | $659,929.15 |
| **PROPERTY CODE INTEREST OWED** | **$4,726,576.70** |
| **TOTAL OWED INCLUDING INTEREST** | **$29,448,775.96** |

## I.   FIRST CAUSE OF ACTION - BREACH OF CONTRACT

74. According to the insurance policy that Plaintiffs purchased, Great American has the duty to investigate and pay Plaintiffs policy benefits for claims made for damages to their property caused by plumbing leaks during the policy period. On or about February 16, 2021. Plaintiffs' properties sustained extensive water damage from plumbing leaks due to burst pipes, which is covered under Plaintiffs' insurance policy with Great American. Great American has breached its contractual obligations and the subject insurance policy by failing to timely and properly pay Plaintiffs policy benefits for the cost to properly repair the subject damage to its properties as described herein as a result of these covered losses. Great American has also breached any contractual provisions on timely investigating, adjusting, and paying Plaintiffs' water damage insurance claim. As a result of these breaches of contract, Plaintiffs have suffered the damages that are described herein.

## II.   SECOND CAUSE OF ACTION –
## VIOLATION OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

75. Great American's conduct that is described in this complaint violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiffs' insurance claim on March 10, 2021, Great American did not request from Plaintiffs any items, statements, and forms that it reasonably believed at that time would be required from Plaintiffs for its claim. As a result, Great American has violated Chapter 542 by failing to accept or reject Plaintiff's claim in writing within 36 days after receiving either actual or written notice of the claim on March 10, 2021. Great American has also violated Section 542.058 by failing to properly pay Plaintiffs claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period.

76. For these violations, Great American owes Plaintiffs the applicable per annum interest as damages for its failure to timely pay the amounts that it did pay and for any unpaid amount under Section 542.060 of the Texas Insurance Code, plus reasonable attorney's fees, prejudgment interest, and court costs. In the event it is determined that Great American owes Plaintiffs any additional monies, then Great American has automatically violated Chapter 542 of the Texas Insurance Code.

## III.   THIRD CAUSE OF ACTION - VIOLATION UNFAIR INSURANCE PRACTICES

77. Plaintiffs incorporate all of the factual allegations in this complaint for these causes of action against Great American under the Texas Insurance Code. Plaintiffs have satisfied all conditions precedent to bringing these causes of action. By its acts, omissions, failures, and conduct, Great American has engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance

Code. Such violations include, without limitation, all the conduct described in this complaint plus Great American's failures to properly and reasonably investigate Plaintiffs' claim.

78. They also include Great American and its agents' misrepresentations to Plaintiffs that are described herein, their unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim, and their failure to pay for the proper repair of Plaintiffs' properties on which Defendant's liability had become reasonably clear. They further include Defendant's hiring and use of biased adjusters and consultants to obtain result-oriented reports and estimates to assist Defendant in low-balling Plaintiffs' insurance claim. In addition, Defendant failed to give Plaintiffs the benefit of the doubt. Specifically, Great American is guilty of the following unfair insurance practices:

   a. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case; as described in Sections (F), (I), (J), (L), (O), (P), and (R) herein, *supra*.

   b. Engaging in unfair claims settlement practices; as described in Sections (I), (M), (P), and (R) herein, *supra*.

   c. Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue such as:

      i. Misrepresenting the material "loss rental value" policy provision by relying on biased accountants such as Schlader and Harms of BCS who used improper calculations that were not included in Plaintiffs loss of rental value claim and that were contrary to the terms of the policy;

      ii. Misrepresenting Plaintiffs' compliance under the subject insurance policy to timely mitigate damages when it had begun repairs as early as March of 2021 which Defendant and its consultants admitted had been ongoing during its initial April 6, 2021 inspection; as described in Sections (C), (E), and (F) herein, *supra*;

      iii. Misrepresenting Plaintiffs compliance under the insurance policy to provide Defendant with relevant documentation to make claim payments even though it was continuously being provided with

Plaintiffs proofs of loss, lost rent spreadsheets, lost rent calculations, early inspection trackers, moisture maps, photographs, and property damage calculations; as stated in Sections (J) and (P) herein, *supra*;

   iv. Misrepresenting the timeliness of receiving Plaintiffs property damage estimates even though Plaintiffs provided Defendant with its estimates before Defendant had done so; as described in Section (L) herein, *supra*.

d. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim from its April 6, 2021 inspection until when repairs were completed on June 13, 2022 on which Defendant's liability has become reasonably clear by:

   i. Refusing to timely accept or reject Plaintiffs' October 13, 2021 proofs of loss; as described in Sections (N) and (O) herein, *supra*.

   ii. Refusing to timely issue property damage and loss of rental value payments to Plaintiffs detriment despite knowing that Plaintiffs were incurring significant debt and that its contractors had placed liens on the Properties; as described in Section (Q) herein, *supra*.

   iii. Blaming Plaintiffs for not acting expeditiously enough even though it refused to issue timely payments and knew of the complex factors associated with the adjustment of Plaintiffs claim as described in Section (K) herein, *supra*.

e. Failing to affirm or deny coverage of Plaintiffs' claim within a reasonable time, including its failure to timely accept or reject Plaintiffs October 13, 2021 proofs of loss;

f. Refusing to properly and timely pay Plaintiffs' claim despite having conducted multiple inspections and receiving ample documentation with respect to the claim and by conducting a sham investigation that ignored and excluded pertinent items of Plaintiffs' loss, specifically, relying upon Sage's result-oriented estimates, and BCS' improper loss of rental value calculations to low-ball Plaintiffs claim; as described in Sections (L) and (O) herein, *supra*.

g. Misrepresenting to Plaintiffs the pertinent facts or policy provisions relating to the coverage at issue on which Defendant's liability had become reasonably clear by:

   i. Stating that it had not received enough information to continue adjusting the claim even though Defendant had conducted various inspections of the Properties where evidence of ongoing repairs were being made; had been provided with continuously updated proofs of loss, lost rent spreadsheets, lost rent calculations, early inspection

trackers, moisture maps, photographs, and property damage calculations; were made aware of JMI's and Associated Innovations' billings through its updated inspection tracker; and had its consultant team inform Lanier that it did not need any additional information

h. Misrepresenting that Plaintiffs "failed to act in manner consistent with attempting to mitigate its loss" even though as early as April 6, 2021, it knew or should have known that Plaintiffs were acting diligently to make the reasonable and necessary repairs to its Properties which is described in Sections (C) and (F) herein, *supra*.

79. Great American has also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiffs' damages that are described in this complaint.

## IV. FOURTH CAUSE OF ACTION - BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

80. Plaintiffs incorporate all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures, and conduct, Great American has breached its common law duty of good faith and fair dealing by partially denying Plaintiffs' claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its partial denial and low-ball payments.

81. Defendant has also breached its duty by unreasonably delaying payment of Plaintiffs' claim and by failing to settle Plaintiffs' claim because Great American knew or should have known, based on its inspections, proofs of loss, lost rent spreadsheets, lost rent calculations, early inspection trackers, moisture maps, photographs, property damage calculations, and its consultants' observations, that it was reasonably clear that the entire claim was covered. Great American's acts, omissions, failures, and conduct proximately caused Plaintiffs' damages.

### V.  PLAINTIFFS' ACTUAL, ADDITIONAL, AND EXEMPLARY DAMAGES

82. The above-referenced conduct of Great American has caused Plaintiffs' damages, which include, without limitation, the unpaid cost to properly repair the damage to the Kobrinsky Properties and its other losses in the approximate amount of $38,000,025.54, plus lost rents of $2,202,215.79, out of pocket costs of $969,501.65, and interest owed to the contractors in the amount of $4,726,576.70, less any prior payments by Great American and Colony and the $100,000 deductible. Plaintiffs are also entitled to recover the applicable per annum interest as damages on all late and unpaid amounts under Section 542.060 of the Texas Insurance Code plus reasonable and necessary attorney's fees, which are to be taxed as costs of the case. All the damages described in this complaint are within the jurisdictional limits of the Court.

83. Plaintiffs are further entitled to recover any consequential damages or lost policy benefits as an independent injury due to Defendant's delay or other statutory violations that "actually caused the policy not to cover losses that it otherwise would have covered." Such damages are lost benefits under Texas law. *See USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 429, 498 (Tex. 2018). All the damages described in this complaint are within the jurisdictional limits of this Court. Defendant has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as these terms are defined in the applicable statutes based on the conduct alleged herein. As a result, Plaintiffs are entitled to additional damages under Section 17.50(b)(1) of the DTPA and Chapter 541 of the Texas Insurance Code.

84. Defendant's breach of its duty of good faith and fair dealing was also done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendant

are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Plaintiffs seek the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendant for its wrongful conduct and to set an example to deter this Defendant and others similarly situated.

## VI.   WAIVER AND ESTOPPEL

85. Great American has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters previously sent to Plaintiffs. Defendant is also estopped from claiming that Plaintiffs are not entitled to recover as damages full replacement costs benefits or any other policy benefits like ordinance and law coverage under the subject insurance policy for not timely making repairs under the doctrines of material breach, impossibility of performance, prevention, and any other applicable doctrine. Such damages also constitute lost policy benefits, consequential damages, and an independent injury under Plaintiffs claims for violations of the DTPA and Chapter 541 of the Texas Insurance Code.

86. In addition, Defendant's reliance upon any alleged breach or violation by Plaintiffs of a warranty, condition or provision in the subject insurance policy, including without limitation any allegations of misrepresentation or fraud, is not actionable or available as a defense unless such breach or violation caused the destruction of the property under Texas' anti-technicality statutes as expressed in Section 705.003 and 862.054 of the Texas Insurance Code.

## VII.    ATTORNEY'S FEES

87. As a result of Great American's conduct that is described in this complaint, Plaintiffs have been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiffs are entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs have already demanded a trial by jury and after the final hearing in this case, Plaintiffs request that the Court award Plaintiffs a judgment against Defendant for the following:

A. All actual damages, economic, consequential, additional, and exemplary damages in an amount within the jurisdictional limits of the court;

B. Reasonable attorney's fees through trial and on appeal;

C. The applicable per annum interest on all late or unpaid policy benefits pursuant to Chapter 542 of the Texas Insurance Code.

D. Pre-judgment and post-judgment interest and costs of court as provided by law;

E. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

*Loree & Lipscomb*
The Terrance at Concord
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310

By: */s/Robert W. Loree*
    Robert W. Loree
    State Bar No. 12579200
    rob@lhllawfirm.com
    Todd Lipscomb

State Bar No. 00789836
todd@lhllawfirm.com
Trevis R. Loree
State Bar No. 24129235
trevis@lhllawfirm.com

Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that Plaintiff has served a true and correct copy of the foregoing document on **August 17, 2023** to counsel of record through the Court's ECF filing system.

/s/Robert W. Loree
Robert W. Loree